**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHALONDA ELEY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>*Defendant*. | Civil Action No. 25‑3628 (SLS)<br>Judge Sparkle L. Sooknanan |

<u>**MEMORANDUM OPINION**</u>

Shanda Eley is a twenty-one-year-old student with autism who receives special education services from the District of Columbia Public Schools (DCPS). During the 2023–2024 school year, Shanda began having significant attendance issues. But DCPS failed to provide Shanda with accommodations and supports to address her frequent absences from school. Shanda's attendance has since improved, and she has been placed in a workforce development program where she is thriving. She and her mother, Shalonda Eley, brought this lawsuit under the Individuals with Disabilities Education Act (IDEA) alleging that Shanda is entitled to a compensatory education award for the period when she was not given proper supports. They challenge an underlying administrative decision by a DCPS-appointed hearing officer who determined that Shanda was not entitled to such an award. The Eleys now seek summary judgment, asking the Court to reverse the hearing officer's decision. The District of Columbia has cross-moved for summary judgment, arguing that the hearing officer's decision was adequately supported and consistent with the law. While the Court is sympathetic to the Eleys' concerns, it is not persuaded that the hearing officer erred such that his determination must be overturned. It thus grants summary judgment to the District.

**BACKGROUND**

**A.      Statutory Background**

The IDEA "aims to ensure that every child has a meaningful opportunity to benefit from public education." *Boose v. D.C.*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). "To serve that goal, the statute requires that public school systems provide all resident children with disabilities a 'free appropriate public education,' or FAPE." *Id.* (quoting 20 U.S.C. § 1412(a)(1)(A)). After a child is identified as having a disability, a team that includes the child's parents, teachers, school officials, and other professionals collaborates to develop an individualized education program (IEP) to meet the child's unique needs. *See* 20 U.S.C. §§ 1412(a)(4), 1414(d)(1)(B). The IEP is "the 'primary vehicle' for implementing the [IDEA]." *Lesesne ex rel. B.F. v. D.C.*, 447 F.3d 828, 830 (D.C. Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). It "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig*, 484 U.S. at 311.

"When the parents of a student with a disability are dissatisfied with a school district or agency's 'identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child,'. . . the IDEA entitles them to present their arguments in an 'impartial due process hearing.'" *Lopez-Young v. D.C.*, 211 F. Supp. 3d 42, 46 (D.D.C. 2016) (first quoting 20 U.S.C. § 1415(b)(6); and then quoting *id.* § 1415(f)). "If a hearing officer finds that a school district or agency denied a child a FAPE, he or she may award, among other remedies, compensatory education, which is 'educational services . . . to be provided prospectively to compensate for a past deficient program.'" *Id.* (quoting *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 522 (D.C. Cir. 2005). "Any party aggrieved by the hearing officer's determination may bring a civil action in state or federal court." *Id.* (citing 20 U.S.C. § 1415(i)(2)).

### B.    Factual Background

Shalonda Eley is the mother of Shanda Eley, an adult student who is "eligible for special education as a student having Autism." AR 4–6, ECF No. 6-1. Because of her disability-related needs, Shanda receives extensive services. Her January 2023 IEP, created when Shanda was eighteen years old and in her fourth year of high school, provided "25 hours per week of Specialized Instruction outside general education and Related Services including 60 minutes per month of Occupational Therapy (OT), 90 minutes per month of Behavioral Support Services and 60 minutes per month of Speech-Language Pathology." AR 7–8, 204. Shanda's January 2023 IEP also provided "as a measurable annual transition goal" that Shanda would "research the entrance requirements and apply for at least one workforce development program." AR 8, 212.

From fall 2022 through the beginning of the 2024–2025 school year, Shanda was enrolled in a "Communication Education Supports" classroom at Eastern High School. AR 7–9, 193. At the beginning of the 2023–2024 school year, she began having attendance issues. AR 15. In November 2023, her IEP progress report noted that she had made "no progress" towards her goal of applying for at least one workforce development program in part because she had already been absent from school more than fifteen times. AR 8, 268. By January 2024, Shanda had "accrued 20 absences," and in the months that followed, her "IEP progress reports" indicated that her absences continued to affect her educational progress. AR 15, 275. Despite Shanda's frequent absences, her IEP amendments in January and March 2024 did not provide "accommodations or supports to address [her] attendance challenges." AR 15.

At the beginning of the 2024–2025 school year, Shanda's attendance improved, and she was "coming to school more consistently." AR 11. By November 2024, her special education teacher and IEP case manager had reported that her "attendance issues were resolved." AR 11,

582. Later that same month, Shanda transferred from Eastern High School into a National Academy Foundation (NAF) workforce development program at the River Terrace Education Campus. AR 9, 335. After joining the program, Shanda began participating in "awareness and work exploration activities and . . . thrived in the program." AR 9–10. An IEP progress report from January 2025 noted that Shanda had "made a 'seamless transition' and was 'progressing nicely in [her] NAF Academy classroom." AR 10.

On May 5, 2025, Shalonda Eley filed an administrative complaint alleging that DCPS had failed to offer Shanda appropriate IEPs for the 2023–2024 and 2024–2025 school years to adequately address her attendance issues. AR 4, 6. She alleged that this failure by DCPS entitled her daughter to an award of compensatory education. *Id*. On July 10 and 11, 2025, an independent hearing officer held an administrative hearing to address the issues raised in the administrative complaint. *Id*. Both Shanda and her mother testified at that hearing. AR 5. They also presented educational advocate Kristin Tully as an additional witness. AR 5, 535.

Ms. Tully opined that Eastern High School's IEPs had been inadequate for Shanda "because they did not include attendance goals or dedicated supports to address [Shanda's] attendance challenges." AR 15. Ms. Tully testified that Shanda's attendance challenges had been at least partly related to health issues and asserted that "the school team should have sat down with Shanda and her mother to review the barriers and discuss supports to help Shanda to be more successful in her attendance." AR 544. Ms. Tully testified that Shanda had not started at the NAF Academy at River Terrace until November 2024 because she had not been "encouraged to apply." AR 541. And she said that Shanda's earlier application to a workforce development program at River Terrace had been rejected "based on attendance issues." *Id*. Finally, Ms. Tully recommended that Shanda "be awarded 20 hours of compensatory education Behavioral Support Services to

address [her] attendance issues," as well as 300 hours of vocational training to make up for time she had lost because of her late start at River Terrace. AR 16, 468, 549–50.

On July 14, 2025, the hearing officer issued his decision. AR 4–21. He found that the failure of the DCPS IEP team to address Shanda's 2023–2024 school year absences "was a denial of FAPE." AR 15–16. But he declined to award "compensatory education" for several reasons. AR 17. First, he found that Shanda's attendance issues were "already resolved," AR 20, and had been reported to be resolved before she matriculated at River Terrace in November 2024, AR 16. Second, he found that Shanda, "by all accounts . . . ha[d] good attendance" at her new school and was "thriving in the program." *Id.* Third, he found that while River Terrace may well have had the "stronger vocational program" for Shanda, he was not convinced that her IEP placement at Eastern High School "was inappropriate." AR 14. And finally, the hearing officer did not credit Ms. Tully's opinion regarding "DCPS' implementation of [Shanda's] post-secondary planning goals" and found that "the hearing evidence did not establish" why Shanda had been unable to enroll at River Terrace at the start of the 2024–2025 school year. AR 19. In other words, he found no clear link between any harm that Shanda might have suffered from her delayed start at River Terrace and DCPS' failure to address her attendance issues. *See* AR 20. Under the circumstances, he concluded that granting Shanda a compensatory education award would "serve no purpose, except to sanction DCPS for not addressing [her] school attendance" in her 2024 IEPs. AR 17.

### C. Procedural Background

The Eleys filed this lawsuit on October 10, 2025, challenging the hearing officer's decision not to issue an award of compensatory education. Compl., ECF No. 1. They ask the Court to order such an award, or, in the alternative, to remand the case to the hearing officer "for consideration of appropriate compensatory education and other relief." Compl. 7, Prayer for Relief. The Parties

have cross-moved for summary judgment. Pls.' Mot., ECF No. 7; Def.'s Cross-Mot. & Opp'n, ECF No. 9. Both motions are now ripe for decision. Pls.' Opp'n & Reply, ECF No. 11; Def.'s Reply, ECF No. 13.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. D.C.*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). "Where, as here, neither party submits additional evidence for the court's review, the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Q.C-C. v. D.C.*, 164 F. Supp. 3d 35, 44 (D.D.C. 2016) (cleaned up).

The party challenging the administrative determination bears "the burden of persuading the court," based on the preponderance of the evidence, "that the hearing officer was wrong." *Holman v. D.C.*, 153 F. Supp. 3d 386, 392 (D.D.C. 2016) (quoting *Reid*, 401 F.3d at 521); 20 U.S.C. § 1415 (i)(2)(C)(iii). "[F]actual findings from the administrative proceeding are to be considered prima facie correct." *Robinson*, 637 F. Supp. 2d at 16 (quotation omitted). And the court must give "due weight" to the hearing officer's decision and "not substitute its own view of sound educational policy for that of the hearing officer." *Holman*, 153 F. Supp. 3d at 392 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982)). "At the same time, however, 'a hearing decision without reasoned and specific findings deserves little deference.'" *Lopez-Young*, 211 F. Supp. 3d at 51 (quoting *Reid*, 401 F.3d at 521).

**DISCUSSION**

The District does not challenge the hearing officer's determination that DCPS denied Shanda a FAPE when it failed to address her declining attendance in her 2024 IEPs. Thus, the only issue in dispute is whether the hearing officer erred when he declined to award compensatory education to Shanda to remedy that FAPE denial. The Court is not persuaded that the hearing officer erred and therefore affirms his decision.

"When a hearing officer or district court concludes that a school district has failed to provide a student with a FAPE, it has 'broad discretion to fashion an appropriate remedy,' which can go beyond prospectively providing a FAPE, and can include compensatory education." *B.D. v. D.C.*, 817 F.3d 792, 797–98 (D.C. Cir. 2016) (quoting *Boose*, 786 F.3d at 1056). The purpose of a compensatory education award, when one is warranted, is to put a student in the position that they would have been in "absent the FAPE denial." *Id*. at 798. The award "must be reasonably calculated to provide the educational benefits that likely would have accrued" from the "special education services the school district should have supplied in the first place" and may take significantly different forms "depending on the child's needs." *Reid*, 401 F.3d at 524.

Notably, however, "an award of compensatory education is not *mandatory* in cases where a denial of a FAPE is established." *Phillips ex rel. T.P. v. D.C.*, 932 F. Supp. 2d 42, 50 n.4 (D.D.C. 2013). This is because in some situations, compensatory education may not help remedy a denial of a FAPE or may be unnecessary because the student has "flourished in [their] current placement." *Id.* at 50 (collecting cases showing that "weight of authority in this Circuit" recognizes that compensatory education awards are not always required to remedy FAPE denials). "Thus, the proper question in most cases is not merely whether a student has been denied a FAPE, but rather, whether the denial of a FAPE has caused educational harm." *Wade v. D.C.*, No. 20-cv-1433, 2021 WL 11585179, at *10 (D.D.C. Feb. 19, 2021), *report and recommendation adopted*, 2021 WL

3663630 (D.D.C. Aug. 18, 2021). "[W]here a hearing officer has declined to find that a violation of the IDEA caused educational harm to the student and has sufficiently supported that conclusion, a decision not to award compensatory education should be affirmed." *Id.*

Here, the hearing officer was not persuaded that DCPS' failure to address Shanda's attendance issues in her 2024 IEP caused her educational harm that warranted a compensatory education award. Most notably, he found that Shanda's attendance issues largely resolved themselves over the course of 2024 even without the accommodations and supports that everyone agrees that DCPS should have provided in her 2024 IEPs. AR 16, 20. Specifically, by the time Shanda transferred from Eastern High School to River Terrace in November 2024, her attendance issues were "already resolved." AR 20. And once enrolled at River Terrace, she "by all accounts . . . ha[d] good attendance." AR 16. Additionally, while the hearing officer faulted DCPS for "not address[ing] [Shanda's] absences in [her] IEPs"—and not offering a "cogent and responsive explanation" for that oversight—he identified no negative effects from Shanda's attendance issues to be corrected through compensatory education. AR 16–17. Rather, he found that Shanda was "thriving in the program" at River Terrace, and that she had quickly immersed herself in the NAF Academy program without giving any impression that she "was behind." *Id.* 16, 20.

For much the same reasons, the hearing officer did not find "credible" Ms. Tully's opinion that Shanda's attendance problems had meaningfully held her back from achieving her "post-secondary planning goals." AR 19. He noted that Shanda appeared to have been enrolled in an internship program at Eastern High School, had created a resume, and had "successfully applied" for the River Terrace "workforce development program." *Id*. He found that "the hearing evidence did not establish" why Shanda had not enrolled at River Terrace at the start of the 2024–2025 school year—*i.e.*, it was not clear that the delay in Shanda's enrollment was because of her

attendance issues. *Id*. Nor did he find that the delay had caused Shanda any cognizable harm given the lack of any indication that her placement at Eastern High School "was inappropriate." AR 14. Consistent with these findings, the hearing officer concluded that the record before him did not support granting a compensatory education award and that doing so "would serve no purpose, except to sanction DCPS." AR 17.

The Court sees no basis to overturn the hearing officer's decision. As the preceding discussion makes clear, the decision was supported by "reasoned and specific findings." *See Reid*, 401 F.3d at 521. And those findings—which are largely factual and presumed to be correct, *see Robinson*, 637 F. Supp. 2d at 16—are not directly contradicted by any credible evidence in the record.

In arguing otherwise, the Eleys emphasize two points made by Ms. Tully during her testimony. First, that "Shanda's issues with attendance impacted her progress in math, reading, and speech." Pl.'s Mot. 5 (citing AR 546). And second, that "Shanda was not accepted to a workforce development program during the 2023–2024 school year" "due to her issues with attendance." Pl.'s Mot. 5 (citing AR 551). The evidence supporting Ms. Tully's points, however, is ambiguous at best.

On the first point, while Shanda's IEP reports during the first half of 2024 indicated that her absences were a problem, they also noted that Shanda was still making progress towards many of her goals. *See* AR 297–300, 324–26, 328–30 (February, April, and June 2024 IEP reports noting specific progress towards goals in mathematics; reading; emotional, social, and behavioral development; communication/speech and language; motor skills/physical development; employment, post-secondary training and education; and independent living).

9

On the second point, there is evidence in the record suggesting that Shanda's delayed application to the NAF Program may have had more to do with Eastern High School staff failing to promptly pursue that opportunity than with Shanda's attendance problems. *See, e.g.*, AR 581–82 (testimony of NAF program manager that she met with Eastern High School staff in spring 2024 but did not hear from them again about Shanda until October 2024). And more importantly, as the hearing officer found, it is not clear that Shanda's placement at Eastern High School was inappropriate or that she suffered any cognizable educational harm from spending thirteen additional weeks at Eastern at the start of the 2024–2025 school year before transferring to River Terrace. *See* AR 14 (hearing officer noting that while NAF Academy may have offered "a stronger vocational program for [Shanda], that does not mean that the IEP placement at [Eastern High School] was inappropriate"); *see also Z. B. v. D.C.*, 888 F.3d 515, 519 (D.C. Cir. 2018) (while "the IDEA requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances, . . . it stops short of requiring public schools to provide the best possible education for the individual child" (cleaned up)).

At bottom, the Eleys have not identified evidence in the record that warrants rejecting the hearing officer's factual findings. *See Savoy v. D.C.*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) ("[T]he Court should defer to the hearing officer's factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." (cleaned up)). And the cases that the Eleys cite involved more severe FAPE denials that more clearly suggested a need for compensatory education. In *Reid*, for example, the D.C. Circuit concluded that the plaintiff was "entitled to compensatory instruction" after he had been denied FAPE for "four-and-a-half years." 401 F.3d at 524, 527. In *Boose*, DCPS' failure to identify and evaluate the plaintiff's son meant that he had

*no IEP at all* from "kindergarten through the first few weeks of first grade." 786 F.3d at 1057.[1]

And in *Holman*, the court found that "DCPS failed to provide 83%" of the services required by the plaintiff's IEP during her final year of high school, and that the denial was plainly "harmful to [the plaintiff]" as she regressed that year "in every area but one." 153 F. Supp. 3d at 393–94. The FAPE denial here is comparatively limited and, as the hearing officer found, this record does not reveal harm to Shanda that could be corrected by compensatory education. Thus, the Eleys have not carried their "burden of persuading the [C]ourt that the hearing officer was wrong" to deny Shanda a compensatory education award. *Reid*, 401 F.3d at 521.

### CONCLUSION

For the reasons above, the Court denies the Eleys' Motion for Summary Judgment, ECF No. 7, and grants the District's Cross-Motion for Summary Judgment, ECF No. 9.

A separate order will issue.

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 29, 2026

---

[1] The Circuit also did not find in *Boose* that a compensatory award was required but instead remanded that issue to the district court to consider in the first instance. 786 F.3d at 1059.